UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMARTE CARTE, INC. and<br>CHARLES E. BAIN,<br><br>    Plaintiffs,<br><br>    v.<br><br>INNOVATIVE VENDING SOLUTIONS<br>LLC and INNOVATIVE STROLLERS<br>LLC,<br><br>    Defendants. | 1:19-cv-08681-NLH-AMD<br><br>**OPINION** |
| INNOVATIVE VENDING SOLUTIONS<br>LLC and INNOVATIVE STROLLERS<br>LLC,<br>    Counterclaimants,<br><br>    v.<br><br>SMARTE CARTE, INC. and<br>CHARLES E. BAIN,<br><br>    Counter-Defendants. | |

**APPEARANCES**:

RYAN W. O'DONNELL
VOLPE AND KOENIG P.C.
830 BEAR TAVERN ROAD, SUITE 303
EWING, NJ 08628

ANTHONY R. ZEULI
MICHAEL A. ERBELE
PETER S. SELNESS
MERCHANT & GOULD P.C.
SUITE 2200 150 SOUTH FIFTH STREET
MINNEAPOLIS, MN 55402-2215

    *On behalf of Plaintiffs/Counter-Defendants*

```
CHRISTOPHER R. KINKADE
KAREN A. CONFOY
FRANK T. CARROLL
CALI R. SPOTA
FOX ROTHSCHILD LLP
PRINCETON PIKE CORPORATE CENTER
997 LENOX DRIVE
LAWRENCEVILLE, NJ 08648
```

   *On behalf of Defendants/Counterclaimants*

**HILLMAN, District Judge**

This matter concerns claims by Plaintiffs arising from Defendants' alleged infringement of their patent for a commercial stroller dispensing system, and Defendants' counterclaims concerning Plaintiffs' alleged "sham litigation" and antitrust conduct. Presently before the Court is Plaintiffs' motion to dismiss two counts in Defendants' counterclaim complaint regarding their alleged "sham litigation" and anticompetitive actions. For the reasons expressed below, the Court will deny Plaintiffs' motion.

## BACKGROUND

According to its amended complaint, Plaintiff/Counter-Defendant Smarte Carte, Inc. is the market-leading designer, developer, manufacturer and lessor of dispensing systems for commercial strollers for use in malls, retail stores and other locations, named "Kiddie Kruzzer."[1] Plaintiff Charles E. Bain

---

[1] Smarte Carte's amended complaint does not identify the trade name of its commercial stroller dispensing system, but it is

2

invented a dispensing system for wheeled devices, and on October 14, 2008, Bain obtained United States Patent No. 7,434,674 (the "'674 patent") for his invention.  Smarte Carte is the exclusive licensee of the '674 patent.

Defendants/Counterclaimants Innovative Vending Solutions, LLC and Innovative Strollers, LLC (hereinafter "IVS") operate a commercial stroller dispensing system under the name "Zoomaroo." Smarte Carte has asserted a one-count patent infringement claim against IVS, claiming that IVS's Zoomaroo system infringes on its '674 patent.

IVS filed four counterclaims, two against Smarte Carte and Bain, and two against Smarte Carte.  Counts One and Two against both Smart Carte and Bain seek a declaration of non-infringement and invalidity of the '674 patent.  Counts Three and Four against Smarte Carte claim that Smarte Carte's patent infringement claim against IVS is a "sham litigation" and Smarte Carte's suit is in furtherance of their monopoly of the commercial stroller system market, in violation of federal and state antitrust laws.

Smarte Carte has moved to dismiss Counts Three and Four in IVS's counterclaim complaint.  Smarte Carte argues that its patent infringement suit is an objectively viable action and

---

provided in Smarte Carte's briefing.

3

IVS's counterclaims are not sufficiently pleaded to sustain their high burden of showing that Smarte Carte should lose its Noerr-Pennington immunity.[2]  IVS has opposed Smarte Carte's motion.

## DISCUSSION

### A.  Subject matter jurisdiction

Because this is a claim of patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, 281-285, this Court has subject matter jurisdiction over Plaintiffs' patent infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court may exercise subject matter jurisdiction over Defendants' counterclaims pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. §§ 1331, 1337, 1338, and 1367.

### B.  Standard for Motion to Dismiss

When considering a motion to dismiss a complaint[3] for failure to state a claim upon which relief can be granted

---

[2] As discussed below, lawsuits are ordinarily protected activity under the Noerr-Pennington doctrine, but the Supreme Court has established a "sham exception," which strips a plaintiff's immunity if its suit is objectively and subjectively intended to interfere directly with the business relationships of a competitor.  See Professional Real Estate Investors, Inc. v. Columbia Pictures Industry, Inc., 508 U.S. 49, 51 (1993).

[3] "The standards for a properly pled complaint[] by extension apply to counterclaims."  U.S. v. Boston Scientific Neuromodulation Corp., 2014 WL 4402118, at *2 (D.N.J. 2014) (citing Cnty. of Hudson v. Janiszewski, 351 Fed. App'x 662, 667–

4

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than

---

68 (3d Cir. 2009) (applying Twombly to counterclaims)).

5

conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.

S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

    **C.    Analysis**

"The Noerr-Pennington doctrine takes its name from a pair of Supreme Court cases that placed a First Amendment limitation on the reach of the Sherman Act." Campbell v. Pennsylvania School Boards Association, --- F. 3d ---, 2020 WL 5049051, at *4 (3d Cir. Aug. 27, 2020) (citing E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); Mine Workers v. Pennington, 381 U.S. 657, 670 (1965)). Lawsuits are ordinarily protected activity under Noerr-Pennington, but the Supreme Court has established a "sham exception." See Professional Real Estate Investors, Inc. v. Columbia Pictures Industry, Inc., 508 U.S. 49, 51 (1993). A lawsuit "does not qualify for . . . immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a

7

competitor."'  Id. (quoting Noerr, 365 U.S. at 144).

In order to determine whether a lawsuit is a "sham," the party invoking the sham exception must show that (1) the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits[;]" and (2) the lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental *process* - as opposed to the outcome of that process - as an anticompetitive weapon[.]"  Campbell, 2020 WL 5049051, at *4 (quoting PREI, 508 U.S. at 60-61) (emphasis in original) (other citations omitted).

The "objectively baseless" standard in the first prong of the test is analogized to the concept of "probable cause as understood and applied in the commonlaw tort of wrongful civil proceedings."  PREI, 508 U.S. at 62.  "Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication."  Id. (citation omitted).  The first prong of the test, with its emphasis on the reasonable litigant, is concerned with the objective merits of the lawsuit at issue.  Id.  "Thus, if probable cause exists, [a court's] inquiry is at an end."  Campbell, 2020 WL 5049051, at *4.

If the objective prong is met, "the fact that a suit may lack any objective merit is not itself determinative."  Id.  A

court must then inquire into the plaintiff's subjective motivations for bringing suit. Id. (citation omitted). A court takes "this additional step to ascertain whether the actual motivation is to dragoon the 'governmental process' itself into use as a competitive tool," which "often means examining 'evidence of the suit's economic viability.'" Id. (citation omitted). "The difficulty of proving subjective motivation obviously 'places a heavy thumb on the scale' in favor of granting protection." Id. (citation omitted). "Only if these objective and subjective tests are satisfied is Noerr-Pennington protection lost and the suit permitted to proceed." Id.

Even if, however, a party defeats the other party's Noerr-Pennington immunity by demonstrating both the objective and the subjective components of a sham litigation, that party must still prove a substantive antitrust violation. PREI, 508 U.S. at 61. "Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim." Id.

To prevail on a monopolization claim under Section 2 of the Sherman Act a plaintiff must prove: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." McGary v. Williamsport

9

Regional Medical Center, 775 F. App'x 723, 728–29 (3d Cir. 2019) (citing Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306-07 (3d Cir. 2007)).[4] To recover damages on a Section 2 claim, a plaintiff must also prove it suffered an "antitrust injury." Marjam Supply Co. v. Firestone Building Products Company, LLC, 2019 WL 1451105, at *6 (D.N.J. 2019). Antitrust injuries have three elements: (1) an injury-in-fact; (2) that has been caused by the Act's violation; and (3) that is the type of injury contemplated by the Act. Id. (citing Brunswick Corp. v. Pueblo Bowl-O-Mat, 429 U.S. 477, 489 (1977)).

Thus, here, in order to overcome Smarte Carte's Noerr-Pennington immunity and to be successful on its counterclaims, IVS must prove that Smarte Carte's patent infringement claim is (1) objectively baseless and (2) was brought as a competitive tool. If IVS succeeds on both of those elements, IVS must then prove that Smarte Carte (1) had monopoly power of the commercial stroller dispensing systems market, (2) it maintained its power

---

[4] The Sherman Act "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993). The New Jersey analog to the Sherman Act, N.J.S.A 56: 9-1, et seq., which forms the basis for IVS's fourth counterclaim, is analyzed similarly. Acme Markets, Inc. v. Wharton Hardware and Supply Corp., 890 F. Supp. 1230, 1238 n.6 (D.N.J. 1995) (explaining that New Jersey's antitrust statutes are construed in harmony with the federal antitrust statutes) (citing N.J.S.A. 56:9-18; Regency Oldsmobile, Inc. v. General Motors Corp., 723 F. Supp. 250, 270 (D.N.J. 1989)).

separate from growth or development as a consequence of a superior product, and (3) it suffered an injury caused by Smarte Carte's anticompetitive actions. At this motion to dismiss stage in the case, however, the inquiry is not whether IVS can prove all of those elements, but rather whether IVS has pleaded sufficient facts, which if considered true, would show that IVS may plausibly prove all those elements.

Smarte Carte argues that its patent infringement complaint against IVS is not objectively baseless, as patents are afforded a presumption of validity and support the patent holder's right to enforce its rights.[5] Smarte Carte further argues that IVS's contentions regarding the merits of Smarte Carte's patent infringement claims against it are common assertions in every routine patent infringement case. Smarte Carte further argues that IVS's allegations regarding its subjective motivations, as well as its alleged anticompetitive conduct, are conclusory without sufficient factual support.

Focusing solely on the allegations in IVS's amended counterclaim complaint, as the Court must on a motion to dismiss, the Court finds that at this pleading stage IVS has

---

[5] Issued patents are presumptively valid, and "that presumption takes away any need for a plaintiff to prove his patent is valid to bring a claim." Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1929 (2015).

satisfied its obligation under Twombly/Iqbal and Rule 8.[6] Whether IVS can show that its claims are more than plausible is a finding for another day.

First, with regard to the objective prong of the Noerr-Pennington doctrine, IVS alleges:

- "Counterclaim Defendants' allegations of infringement are meritless. . . . Counterclaim Defendants served their Infringement Contentions on Counterclaimants on September 24, 2019.  The Infringement Contentions clearly evidenced Counterclaim Defendants' failure to conduct a proper pre-suit investigation of the Zoomaroo Dispensing System.  For example, many of the pictures in Counterclaim Defendants' claim charts were vague and had no arrows or explanations to show how the Zoomaroo Dispensing System met the elements of the asserted claim.  Counterclaim Defendants' Infringement Contentions also used the same non-annotated pictures to identify several separate elements of an asserted claim, and Counterclaim Defendants' were inconsistent in the elements they did attempt to identify.  This is an implicit admission by Counterclaim Defendants that several elements of the claims of the '674 Patent are absent from the accused Zoomaroo Dispensing System, since by definition different claim elements must correspond to different structures."

- "Counterclaim Defendants relied on their observation of a prototype of the Zoomaroo Dispensing System from a trade show in 2018, rather than inspecting a commercial version

---

[6] Smarte Carte argues that the timing of IVS's counterclaims is suspect.  Smarte Carte contends that its action had been pending for nearly one year, Defendants delayed filing their "sham litigation" claims until the deadline to file motions to amend pleadings, and Defendants only raised these alleged antitrust counterclaims after dismissing their prior counterclaim of patent infringement that very same week. (Docket No. 53-1 at 8.)  IVS refutes Smarte Carte's characterization of its actions. On this motion to dismiss, the Court may only consider the allegations contained in IVS's counterclaims.  If Smarte Carte wishes to seek relief on these issues, Smarte Carte may avail itself to other avenues available under the local and federal rules.

of the system after it was later launched."

- "[IVS's] Non-Infringement Contentions further showed how crucial elements of the asserted claims of the '674 Patent were missing from the Zoomaroo Dispensing System, which Counterclaim Defendants should have recognized even from a basic observation of the system (putting aside that they apparently never disassembled the system), and as was implicitly admitted by claiming that the same features of the Zoomaroo Dispensing System amounted to different claim limitations—a violation of canons of claim construction."

(Docket No. 52 at 13-14.)

IVS's allegations regarding Smarte Carte's objectively baseless patent infringement suit continue with various examples of the alleged non-infringing differences between the Kiddie Kruzzer and Zoomaroo systems that would have been obvious to Smarte Carte, thus allegedly demonstrating that Smarte Carte could not realistically expect success on the merits. (Id. at 14-17.) IVS further alleges in its counterclaim, as it did in its Non-Infringement Contentions, that Smarte Carte should have known the well-established law that Bain's patent is invalid - and therefore its patent infringement lawsuit objectively baseless - because products embodying the claimed invention were sold in the United States more than one year before the filing of the '674 Patent. (Id. at 18-20.)

These allegations, when accepted as true, state a plausible claim that Smarte Carte's patent infringement suit is objectively baseless.

Second, with regard to the subjective element of the Noerr-

13

Pennington doctrine, IVS alleges:

- Smarte Carte historically competed against IVS in the vending massage chair market.

- Smarte Carte was intrigued by IVS's Zoomaroo product and inquired about buying out IVS, but IVS declined.

- Smarte Carte is pursuing "this meritless litigation in bad faith in an attempt to gain access to Counterclaimants commercially sensitive documents. Counterclaim Defendants have sought discovery of customer, financial, manufacturing, and other competitively sensitive information."

- Despite Counterclaimants repeatedly providing technical information about the Zoomaroo Dispensing System, which show the product's non-infringing nature, Counterclaim Defendants have continued to more urgently press for this type of commercially sensitive information."

- "After multiple conversations soliciting the acquisition of Counterclaimants business—rather than compete openly in the marketplace—Counterclaim Defendants have utilized this litigation, purporting to enforce an old patent in a legacy product that they are not even deploying anymore, as a means to obtain commercially sensitive information from their main competitor."

(Id. at 20-22.)

Regarding Smarte Carte's motivation for bringing this suit against IVS as a competitive tool, IVS further alleges:

- "Prior to this lawsuit, Counterclaimants were rapidly cutting into Smarte Carte's share in the marketplace."

- "Prior to filing this lawsuit, Smarte Carte approached Counterclaimants concerning acquiring Counterclaimants' stroller business. Upon information and belief, Smarte Carte has historically acquired its competition rather than compete in the marketplace. Counterclaimants declined Smarte Carte's advances."

- "Counterclaim Defendants are utilizing this lawsuit to

14

>      deter Counterclaimants from continuing to compete, or at
>      least slow down Counterclaimants' expansion, so that
>      Counterclaim Defendants can try to replace the antiquated
>      patented Kiddie Kruzzer systems with new systems and new
>      contract terms that will foreclose new competition."

(Id. at 23.)

Based on these allegations, IVS has sufficiently pleaded that Smarte Carte's instant suit was brought as a competitive tool.

Third, as to IVS's antitrust claims, IVS alleges:

- "Upon information and belief,[7] Smarte Carte currently

---

[7] Smarte Carte challenges IVS's use of the phrase "upon information and belief" as an indicator that IVS's pleadings are insufficient.  The Third Circuit "has explained that pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible.  In fact, this Court has explained that '[s]everal Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession." McDermott v. Clondalkin Group, Inc., 649 F. App'x 263, 267-68 (3d Cir. 2016) (citing In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997); Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 107 n.31 (3d Cir. 2015)) (other citations omitted).  This is the situation here.  IVS's use of "upon information and belief" is related to information that is within Smarte Carte's knowledge, and IVS provides sufficient facts to support the claims which contain that phraseology.  See, e.g., Skycliff IT, LLC v. N.S. Infotech Limited, 2018 WL 2332219, at *3 (D.N.J. 2018) (citing McDermott) ("A Rule 12(b)(6) motion looks to pleadings, not evidence, and pleading upon information and belief is undoubtedly permissible."); see also Shareholder Representative Services LLC v. Medidata Solutions, Inc., 2020 WL 972618, at *2 (D. Del. 2020) ("[I]if the phrase 'upon information and belief' was stripped altogether from the

15

- controls approximately ninety percent (90%) of the relevant product market."

- "The relevant product and geographic market is the leasing of dispensing systems for commercial strollers in the United States."

- "Upon information and belief, before Counterclaimants entered the marketplace, Smarte Carte had nearly full control of the relevant product market. In fact, consumers would complain to IVS, stating that they were unhappy with the product offered by Smarte Carte, but were forced to continue their business relationship with Smarte Carte because there were no other options available."

- "Upon information and belief, Counterclaim Defendants have not recently updated the design of their Kiddie Kruzzer dispensing system, nor are particularly responsive in the maintenance of those systems currently installed."

- "Additionally, upon information and belief, Counterclaim Defendants are no longer installing new units of the Kiddie Kruzzer dispensing system; rather, they are installing new 'stackable' stroller systems that do not practice the claimed inventions of the '674 Patent."

- "Counterclaim Defendants are abusing the judicial systems through the wrongful filing and maintenance of this litigation for the exclusionary and anticompetitive purposes, with the direct and intended effect of stopping Counterclaimants expansion into the marketplace and harming Counterclaimants reputation."

- "As a direct and proximate result of Counterclaim Defendants' improper and exclusionary conduct, consumers in the United States are being limited in their ability to choose."

---

Complaint . . . the allegations would set forth plausible facts that (if proven true) could establish breaches of the SPA and EEA. Moreover, even were Plaintiff—because of its repeated use of this 'upon information and belief' phraseology—required to demonstrate that more robust factual information was 'peculiarly within the defendant's knowledge or control,' the Court would find that the Complaint's allegations can support such a conclusion.").

- "Prior to this lawsuit, Counterclaimants were rapidly cutting into Smarte Carte's share in the marketplace."

- "Counterclaim Defendants are also utilizing the public forum of this lawsuit to indicate to the marketplace that there is a risk associated with doing business with Counterclaimants."

- "[T]he mere filing of the present lawsuit has greatly harmed Counterclaimants reputation, of which Counterclaimants spent many years and very significant expenses to achieve."

- "As a direct and proximate cause of Counterclaim Defendants' filing and prosecution of the sham litigation, Counterclaimants have suffered and will continue to suffer significant competitive harm.  Counterclaim Defendants' wrongful and exclusionary conduct has caused a substantial delay in Counterclaimants expansion efforts, causing a substantial and unjustified delay in the commencement of Counterclaimants sales of the Zoomaroo Dispensing System.  Counterclaim Defendants' wrongful conduct is also causing irreparable harm to Counterclaimants' hard-earned reputation in the marketplace."

- "[D]ue to Counterclaim Defendants wrongful conduct, Counterclaimants have suffered actual damages in loss profits due to being foreclosed from selling in the relevant market, loss of future sales and profits due to being foreclosed from selling in the relevant market, and loss of valuable customer goodwill and competitive advantage from having these baseless allegations brought against them."

(Docket No. 52 at 8-9, 22-24.)

Smarte Carte argues that IVS has failed to properly allege sufficient facts to support the product market and the geographic market elements of their antitrust claim.  Smarte Carte also argues that IVS has failed to properly allege how Smarte Carte has engaged in anticompetitive conduct that is

17

causally linked to an antitrust injury.  The Court disagrees.

As noted, *supra*, note 7, data to support Smarte Carte's market share is peculiarly within Smarte Carte's possession. Additionally, IVS does not simply plead that Smarte Carte has control of the market, but rather IVS specifies the percentage of the market control.  Further, in its amended complaint, Smarte Carte describes itself as: "Smarte Carte is the market-leading provider of commercial stroller dispensing systems for use in malls, retail stores and other locations."  (Docket No. 19 at 3.)

Next, IVS has properly alleged the specific product market - namely, leasing of commercial stroller dispensing systems.[8] Further, IVS has properly defined the geographic market by pleading it encompasses the United States.  Indeed, Smarte Carte's amended complaint defines the same geographic market. (Id. at 4. "Defendants have used, leased, sold and/or offered for sale in the United States commercial stroller dispensing systems under the name Zoomaroo.  This includes the dispensing system shown below, which directly infringes at least exemplary claim 1 of the '674 patent.").

---

[8] Smarte Carte argues that "sales" can be interchanged with "leases," and therefore IVS's allegation concerning the product market is deficient.  Because IVS precisely states that the product market is the "leasing of commercial stroller dispensing systems," the Court does not find that "leasing" may be interchanged with "sales."

18

Finally, as outlined above, IVS has sufficiently articulated it suffered an injury as a result of Smarte Carte's alleged conduct that has affected the competitive process of leasing commercial stroller dispensing systems.

Thus, IVS has properly pleaded its antitrust counterclaims by alleging sufficient facts to support the plausibility of the necessary elements of those counterclaims.

The Court recognizes that "[b]ecause of the innovation and commercial viability that they encourage, courts have afforded suits to enforce patents a presumption of good faith," and that "[i]t naturally follows that a higher standard of proof is needed to overcome that presumption." Campbell, 2020 WL 5049051, at *7 (further observing that the Court of Appeals for the Ninth Circuit has explained, "[t]he road to the Patent Office is so tortuous and patent litigation is usually so complex," that "no less than [c]lear, convincing proof of intentional fraud involving affirmative dishonesty" would suffice in patent cases (citation omitted)). But the Court further recognizes "district courts within this Circuit have routinely prohibited parties from invoking the protections of Noerr-Pennington at the dismissal stage of a case in the context of patent suits, at which time the factual record remains undeveloped and insufficient for the purpose of determining whether a 'sham litigation' has been filed." Takeda

19

Pharmaceutical Company Limited v. Zydus Pharmaceuticals (USA) Inc., 358 F. Supp. 3d 389, 394-95 (D.N.J. 2018) (citations omitted).

IVS has surmounted the first hurdle of sufficiently pleading the elements of a sham litigation, as well as the elements of its antitrust claims.  Going forward, IVS will have a "higher standard of proof" to meet the "exacting standard" to overcome the "heavy thumb on the scale" in favor of Smarte Carte's Noerr-Pennington immunity.  Hanover 3201 Realty, LLC v. Village Supermarkets, Inc., 806 F.3d 162, 180 (3d Cir. 2015).

## **CONCLUSION**

For the reasons expressed above, Plaintiffs' motion to dismiss Counts Three and Four in Defendants' counterclaim complaint will be denied.

An appropriate Order will be entered.


Date: September 23, 2020              s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.