**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **SMARTE CARTE, INC.**, | |
| *Plaintiff*, | |
| v. | **Case No. 1:19-cv-08681-JDW** |
| **INNOVATIVE VENDING SOLUTIONS LLC et al.**, | |
| *Defendants*. | |

**<u>MEMORANDUM</u>**

Welcome to the Stroller Wars, where companies compete to dominate the mall concourse one push at a time. The combatants in this fight are Smarte Carte, Inc., on the one hand, and Innovative Vending Solutions LLC and Innovative Strollers LLC (together, "IVS"), on the other. Smarte Carte alleges that IVS's Zoomaroo stroller dispenser system infringes on a patent that Smarte Carte owns. IVS alleges that Smarte Carte has engaged in sham litigation to monopolize the market for stroller dispenser systems. I conclude that Smarte Carte can proceed with one of its infringement claims and that IVS can pursue its invalidity claims. But the rest of Smarte Carte's claims fail, as does IVS's sham litigation claim, so I will grant summary judgment as to those claims.

# I.    BACKGROUND

## A.    The '674 Patent

Smarte Carte owns U.S. Patent No. 7,434,674 ("'674 Patent") for a "Dispensing System for a Wheeled Device," which claims priority to U.S. Provisional Patent Application No. 60/555,277 ("'277 Provisional"). The '277 Provisional, titled "A Dispensing System For Wheeled Carts," describes a "self service vending system for wheeled vehicles such as those cart types used in shopping centers, malls and retail stores." (D.I. 291-8 at 2, 5 of 13.) It explains that "[c]arts are irremovably accepted into the raceway at the docking ports by a receiver apparatus built into the cart to engage and controllably guide in the docking of the cart being received." (*Id.* at 5 of 13.) Figure 6 of the '277 Provisional shows an example of the receiving apparatus on the cart, and Figure 7 shows the receiving mechanism's interaction with the cart.

The U.S. Patent and Trademark Office issued the '674 Patent on October 14, 2008. The patent includes three independent claims (Claims 1, 8, and 16) and fifteen dependent claims (Claims 2–7, 9–15, and 17–18). In general terms, the '674 Patent describes a system (and a method in Claims 8–15) for dispensing wheeled devices like strollers or grocery carts. The system includes a main body called a "main raceway" and arms that extend from the main raceway to offer docking ports for the wheeled devices. A user pays at a central control system that permits the desired wheeled device to release after payment. Claims 1 and 8 include a limit that enables the main raceway to be positionable in "a

2

plurality of shapes." (D.I. 269-4 at 5:59–60, 6:62–63.) Claim 16 does not have a comparable limit. Claims 1, 8, and 16 all require a "plurality of docking ports extending" from the main raceway. (*Id.* at 5:31–32, 6:57–58, 8:13–14.)

Claims 1, 9, and 16 use the term "cart raceway." Claim 1 explains that "the at least two branch arms provid[e] a cart raceway for the main raceway." (D.I. 269-4 at 5:55–56.) Claims 9 and 16 explain that "the first docking port member or the second docking port member of the at least two branch arms provid[e] a cart raceway." (*Id.* at 7:19–21, 8:42–44.)

During the prosecution of the '674 Patent, the inventor, Charles Bain, submitted information demonstrating that, at least on May 18, 2003, and June 9, 2003, he sold products that the patent application covered.

### B.    The Zoomaroo System

IVS makes and sells the Zoomaroo system, which dispenses strollers, primarily in malls. The Zoomaroo has a control housing at the end of the main raceway, which allows customers to rent strollers. Each stroller attaches to the main raceway via a latching mechanism. The Zoomaroo's main raceway can accommodate strollers in a single- or double-sided configuration, but it cannot be arranged into a different shape, such as a T- or L-shaped configuration.

### C.    Procedural History

On March 15, 2019, Smarte Carte filed this suit alleging that IVS's Zoomaroo stroller system infringes Claims 1–3, 8–11, and 16 ("Asserted Claims") of the '674 Patent. Smarte Carte amended its Complaint on September 3, 2019. IVS asserts counterclaims, including declaratory judgment of invalidity and non-infringement and sham litigation in violation of federal and state antitrust laws. The case was initially assigned to Judge Noel Hillman, who issued a claim construction decision on February 28, 2023. Judge Hillman noted that there was tension in the use of the term "cart raceway" in the different claims. However, he concluded that "the structures that create the cart raceway are the individual branch arm and the docking station on the one hand, and the guide plates on the opposite side of the locking assembly on the other: it is the space that is created by these structures coming into alignment." (D.I. 117 at 92.) He therefore construed the term "cart raceway" to mean "a cart raceway provided by the space between each side of the locking assembly located on each branch arm and matching receiving wheeled device." (*Id.* at 92–93.)

Both Parties moved for partial summary judgment. IVS seeks judgment that Asserted Claims 1–3, 9–11, and 16 of the '674 Patent are invalid because they contain the indefinite term "cart raceway." IVS also seeks judgment that all Asserted Claims are invalid because Smarte Carte is not entitled to the '277 Provisional's priority date, so the sales that Mr. Bain made in 2003 invalidate the '674 Patent. Finally, IVS argues that its Zoomaroo system does not infringe the '674 Patent because (a) it is not configurable into multiple

4

shapes, (b) it does not have docking ports that extend from the main raceway, and (c) it does not have a cart raceway. Smarte Carte seeks summary judgment of no antitrust liability. The Motions are ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). When determining whether a genuine issue of material fact exists, a court must

5

"view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

When the moving party would bear the burden of proof at trial, it must "show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007) (citation omitted). In that instance, summary judgment is only appropriate if "a reasonable juror would be compelled to find [the moving party's] way on the facts needed to rule in its favor on the law." *Id.* at 238 (citation omitted). "[D]oubts as to the sufficiency of the movant's proof" suffice to defeat summary judgment. *Id.*

## III.    ANALYSIS

### A.    Invalidity

#### 1.    Indefiniteness

A patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Patents are presumed valid, and a party asserting indefiniteness must prove it by clear and convincing evidence. *See* 35 U.S.C. § 282; *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). If there is an irreconcilable contradiction within a patent, then the claims subject to the

contradiction are indefinite. *See Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002). A court should not "rewrite claims to preserve their validity." *Id.*

IVS's indefiniteness argument focuses on the different formulations of "cart raceway" in Claims 1, 9, and 16. The term does not appear to have a common meaning, either as a technical matter or in common usage. The claims describe the "cart raceway" using different verbiage that leaves open the possibility of a conflict in its meaning. The specification, in turn, only mentions the term once, when it explains that "[e]ach branch arm provides a cart raceway to receive a wheeled device." (D.I. 269-4 at 3:47–49.) The specification also uses the term "raceway" several times where the surrounding context indicates that it is describing the cart raceway. (*Id.* at 4:38–42.)

IVS argues that Judge Hillman's construction leaves open the possibility that the term "cart raceway" is indefinite because it conflicts with Claim 1's use of the term. That argument rests on the premise that the only way to understand the term "cart raceway" in Claim 1 is as the space between the branch arms. Though that's one way to read the claim language, it's not the only way. Claim 1 might also mean that each branch arm separately provides a cart raceway. For instance, consider a power strip. In the sentence, "The sockets provide a power supply," each socket provides the power supply; the space between the sockets does not provide the power supply. Or consider an airport with multiple runways and the sentence, "The runways providing a path for takeoff and landing." Again, a reader would understand that each runway provides a separate path.

The path is not the space between the two runways. That same reading is possible for Claim 1; the branch arms each provide a cart raceway at their terminal points, not in the void between them.

Because that reading is possible, it's the one that I will adopt for Claim 1. *First*, adopting that reading is consistent with the presumption that patents are born valid. *See Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1270 (Fed. Cir. 1985). It's not rewriting the claim; it just resolves an ambiguity in the claim language in a way that preserves the validity, which is a preferred outcome "when the claims are amenable to more than one reasonable construction[.]" *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008). *Second*, adopting that construction is consistent with the Federal Circuit's explanation that "claim terms are normally used consistently throughout [a] patent[.]" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Indeed, for that reason, "[o]ther claims of the patent in question, both asserted and unasserted, can … be valuable sources of enlightenment as to the meaning of a claim term." *Id.* Therefore, if there is a reading of Claim 1 that is consistent with Claims 9 and 16, then Claims 9 and 16 can demonstrate that the consistent reading is the one that I should adopt. Finally, adopting that construction of the term allows one to use the construction that Judge Hillman formulated throughout the claims of the patent, obviating the possibility of an irreconcilable conflict among claim terms.

IVS does point to some other evidence that it contends demonstrates a contradiction between the meaning of "cart raceway" in the various claims, but I don't find any of it persuasive. *First*, IVS argues that element 182, depicted in Figures 1 and 7 of the '674 Patent, shows that the cart raceway is a space between the branch arms, consistent with its interpretation of Claim 1. But the '674 Patent labels element 182 as a "selected position" on the control terminal keyboard where the docking port is located. (D.I. 269-4 at 4:55–56.) Figure 7, a closeup of the docking mechanism, confirms this. Thus, even if element 182 did refer to the cart raceway, its representation of the raceway's location would be consistent with, not contrary to, the description in Claims 9 and 16. *Second*, IVS picks out a portion of the specification that reads: "Within each of the branch arms is the locking assembly, which connects wheeled device thereto." (*Id.* at 3:46–47.) But this language doesn't say anything about the position of the cart raceway. And, in fact, the next sentence is consistent with my reading of Claims 1, 9, and 16 as mutually compatible. It states that "[e]ach branch arm provides a cart raceway to receive a wheeled device." (*Id.* at 3:47–49.) IVS has failed to carry its burden of proving indefiniteness by clear and convincing evidence. *Nautilus, Inc.*, 572 U.S. at 901.

### 2.    Prior sales

Under the applicable version of 35 U.S.C. § 102(b),[1] "[a] person shall be entitled to a patent unless ... the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]" *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1319–20 (Fed. Cir. 2002) (citing 35 U.S.C. § 102(b) (2000)). IVS has the initial burden of producing evidence that there was a prior sale. Smarte Carte must then produce evidence that no sale occurred, or that the Asserted Claims are entitled to an earlier filing date. The burden of production then shifts back to IVS to show that Smarte Carte is not entitled to the benefit of the earlier filing date. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327–28 (Fed. Cir. 2008). Ultimately, IVS must prove by clear and convincing evidence that Smarte Carte's invention was on sale more than one year before the filing date of the patent application. *See Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008).

The '674 Patent issued on October 14, 2008, based on an application dated February 1, 2005. IVS has shown that a version of the patented product was on sale by May 18, 2003. Therefore Smarte Carte must produce evidence that it is entitled to the filing date of the '277 Provisional, which was less than a year after the sales that Mr. Bain made. Specifically, Smarte Carte must show "not only the existence of the earlier

---

[1] Because the '674 patent has an effective filing date before March 16, 2013, the effective date of the America Invents Act, the pre-AIA version of § 102(b) applies. *See SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1376 (Fed. Cir. 2023).

application, but why the written description in the earlier application supports the claim." *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,* 800 F.3d 1375, 1379 (Fed. Cir. 2015).

"Claims enjoy the earlier filing date only if the provisional application provided adequate written description under 35 U.S.C. § 112." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.,* 595 F.3d 1340, 1359 (Fed. Cir. 2010). Section 112 requires the description of the invention to be "in such full, clear, concise, and exact terms as to enable any person skilled in the art … to make and use the same[.]" 35 U.S.C. § 112. In other words, a person skilled in the art must be able to "clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Trading Techs. Int'l,* 595 F.3d at 1359 (quoting *Lockwood v. Am. Airlines,* 107 F.3d 1565, 1572 (Fed. Cir. 1997)). The analysis of a priority date occurs on a claim-by-claim basis. *See Lucent Techs., Inc. v. Gateway, Inc.,* 543 F.3d 710, 718 (Fed. Cir. 2008).

IVS argues that the '277 Provisional does not disclose a docking port member with a receiving slot, a receiving latch, and a locking system. I disagree. The '277 Provisional discloses a raceway that "accept[s]" carts "at the docking ports by a receiver apparatus built into the cart to engage and controllably guide in the docking of the cart being received." (D.I. 291-8 at 5 of 13.) And the '674 Patent describes docking ports that have a "receiving slot" and carts that have a "receiving latch" to permit a wheeled device to "be attached to or removed from the dispensing system." (D.I. 269-4 at 5:38–42.) Although these descriptions are not the same, "[i]dentity of description is not necessary"; the

question is whether "[w]hat is claimed by the patent application [is] the same as what is disclosed in the specification[.]" *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1296 (Fed. Cir. 2002). In this case, the '277 Provisional and the '674 Patent disclose the same basic structure. And it's reasonable to think that a person of ordinary skill in the art ("POSITA") would have understood them comparably at the time. Smarte Carte has therefore satisfied its burden of producing evidence that it is entitled to the priority date of the '277 Provisional, rendering the sales in May 2003 irrelevant.

Nonetheless, IVS contends that they are different structures based on a comparison of figures in the '277 Provisional and the '674 Patent and comments in the prosecution history. Certainly, Figure 5 of the '674 Patent is not identical to Figure 6 of the '277 Provisional, and the '674 Patent includes much more detail about the mechanics. But IVS hasn't offered any evidence suggesting how a POSITA would have understood the term "receiver apparatus" in the '277 Provisional or otherwise given me a reason to think that the term does not describe the mechanism that the '674 Patent discloses. Instead, IVS just leaps to the conclusion that the slot-latch structure "would require undue experimentation for a skilled artisan to replicate using only the subject matter from the '277 Provisional." (D.I. 272 at 16.) Perhaps a skilled artisan would have known that "receiver apparatus" discloses a slot and latch structure, or maybe that's just one preferred embodiment of a receiver apparatus. Maybe it refers to something else entirely. I don't

know. It was IVS's burden to prove invalidity by clear and convincing evidence, and the evidence presented here falls short.

### B.    Non-Infringement

Infringement occurs when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States[.]" 35 U.S.C. § 271(a). Determining infringement requires two steps: "first, a court construes the scope and meaning of the asserted patent claims, and then compares the construed claims to the accused product or process." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016) (citation omitted). When construing the claims, judges may depart from a word's ordinary and customary meaning only when a patentee (i) sets out a definition and acts as his own lexicographer, or (ii) disavows the full scope of a claim term either in the specification or during prosecution. *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Otherwise, words "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Id.* (citing *Phillips*, 415 F.3d at 1313).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.* If, however, "determining

the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art," the judge should look to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (quotation omitted). Finally, the judge must interpret the claim "with an eye toward giving effect to all terms in the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (citation omitted). Readings that render claim language superfluous or meaningless are disfavored. *See id.* (collecting cases).

The accused product may infringe literally or via the doctrine of equivalents. For literal infringement, the accused product must "contain[] every limitation in the asserted claims"; "[i]f even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citations omitted). Alternatively, a device infringes by equivalents "if, and only if, the differences between the claimed and accused products or processes are insubstantial." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517 (Fed. Cir. 1995) (citation omitted). For instance, the change in the accused device might be "so facially unimportant and insubstantial that little additional guidance is needed for a fact finder to determine whether an accused device includes an equivalent of a claim limitation." *Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) (quotation omitted).

Another test for equivalency is whether "each element of the accused device performs substantially the same function, in substantially same way, to achieve substantially the same result." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1317 (Fed. Cir. 2003). Regardless of the method, "proof of the substantiality of the differences rest[s] on objective evidence rather than unexplained subjective conclusions, whether offered by an expert witness or otherwise." *Hilton Davis Chem. Co.*, 62 F.3d at 1519.

Infringement is a question of fact. *See Thorner*, 669 F.3d at 1317. Accordingly, summary judgment of non-infringement "is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents." *Id.* (citation omitted). All reasonable factual inferences should be drawn in favor of the non-moving party. *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000).

### 1.    A "main raceway" that is positionable in a "plurality of shapes"

The "main raceway" of the Zoomaroo system includes a main arm, at least two branch arms, and docking ports, as shown in Figure 1 (below). (D.I. 292-1 ¶ 41.)



*Fig. 1*: Zoomaroo system, dual-sided layout[2]

In addition to the dual-sided layout depicted above, with strollers docked on both sides of the main raceway, the Zoomaroo system is available in a single-sided layout. The Parties disagree about whether those two layouts constitute different "shapes" within the meaning of the '674 Patent.

The '674 Patent doesn't define "shape" or disavow its full scope, so I give the term its ordinary and customary meaning. And, because "shape" doesn't appear to have an industry meaning distinct from its widely accepted lay meaning, and the Parties do not argue otherwise, I interpret it as referring to "the external form or appearance

---

[2] *See* D.I. 272 at 20.

characteristic of someone or something; the outline of an area or figure" such as a triangle or circle. *Shape*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).[3]

Given this meaning, I agree with IVS that the single- and dual-sided Zoomaroo configurations are the same shape. In both layouts, the main raceway is a line. No other shape is possible. Though Smarte Carte is correct that the two layouts change the position of the docking ports, that doesn't necessarily mean that the layouts constitute different shapes. One could, for instance, vary the position of the docking ports by grouping them at the ends of a linear main raceway, rather than evenly distributing them throughout. This would change the position of the docking ports, but not the main raceway's shape. Further, the '674 Patent itself distinguishes between the possibility of attaching carts to both sides of the raceway and different raceway shapes. It states that "[d]ocking ports may be installed on one or both sides of the raceway." (D.I. 269-4 at 3:28–29.) It then separately discusses possible linear, L-shaped, T-shaped, angular, or "other suitable" configurations. (*Id.* at 3:30–34.) The '674 Patent thus acknowledges that one could attach strollers to both sides of a raceway, without that configuration becoming a new raceway shape.

---

[3] Although this definition slightly postdates the issuance of the '674 Patent, the definition of the term "shape" appears to have been consistent over the past thirty years. *Compare Shape*, WEBSTER'S II NEW COLLEGE DICTIONARY (1999) ("[c]haracteristic surface configuration" and "particular form") *with Shape*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/shape (last visited April 18, 2025) ("a standard or universally recognized spatial form").

The testimony from Smarte Carte's technical expert, Dr. T. Kim Parnell, doesn't change this analysis or create a triable factual dispute. His report states that "[t]he main raceway of the Zoomaroo System is positionable in a plurality of shapes as configuration options." (D.I. 292-23 ¶ 161.) But Dr. Parnell provides no justification for this conclusion, other than observing that the system is available in both a single- and dual-sided "shape." Without some sort of explanation about why these configurations constitute different shapes, his assessment is merely an unsupported assertion insufficient to raise a genuine issue of material fact. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000).

Because the Zoomaroo system's single- and dual-sided raceway configurations are one shape,[4] no reasonable jury could find that the main raceway is positionable in a "plurality of shapes," as Claims 1–3 and 8–11 require. Smarte Carte does not argue that the Zoomaroo system infringes under the doctrine of equivalents, so I will grant summary judgment on this issue in favor of IVS. Finally, because the Zoomaroo system does not infringe Claims 1–3 and 8–11, I need only consider arguments that affect Claim 16, the remaining claim in the case.[5]

---

[4] IVS also argues that the single- and dual-sided layouts are "two distinct products rather than alternative configurations of the same product." (*See* D.I. 272 at 25.) Because I conclude that—even if they are the same product—both layouts are the same shape, I need not address this argument.

[5] For this reason, I will not take up the Parties' arguments regarding whether the Zoomaroo system includes "a receiving latch secured to at least the first docking port member and the second docking port member of the at least one wheeled device," which relates only to Claims 8–11.

### 2.    "[A] main raceway having a plurality of docking ports extending therefrom"

Smarte Carte hasn't set out its own definition of "extending therefrom" or disavowed the full scope of the term. Like "shape," this term doesn't appear to have an industry-specific meaning, so I give it its accepted lay meaning. To "extend" is "to spread from a central point to cover a wider area." *Extend*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).[6] So, the question is whether the docking ports of the Zoomaroo system spread or stretch from the main raceway to cover a wider area.

The main raceway of the Zoomaroo system includes a main arm, at least two branch arms, and docking ports. (D.I. 292-1 ¶ 41.)



*Fig. 2: Zoomaroo main raceway closeup[7]*

---

[6]    *See also Extend*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/extend (last visited April 24, 2025) ("to spread or stretch forth"); *Extend*, WEBSTER'S II NEW COLLEGE DICTIONARY (1999) ("to expand in area or scope").
[7]    *See* D.I. 272 at 20.

19

Figure 2 (above) is a closeup of the Zoomaroo system's main raceway, with its branch arms and docking ports labelled for identification. It shows that the docking ports are integrated *within* the main raceway, of which they are a part. They do not extend therefrom.

Smarte Carte, citing the testimony of its expert, Dr. Parnell, argues that "one structure may extend from a structure of which it is a part," like "fingers that are part of a hand." (D.I. 292 at 12.) But fingers do not extend from one's hand; they are part of the hand. They extend from one's palm, which is a different part of the hand. Although Smarte Carte submits that Dr. Parnell's testimony alone is sufficient to defeat summary judgment, it is just a "[b]road conclusory statement[]" that an expert offers and is not "sufficient to establish a genuine issue of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001).

In the alternative, Smarte Carte contends that the Zoomaroo system infringes the '674 Patent under the doctrine of equivalents. The test for equivalents is whether the differences between the products are insubstantial, for instance if the accused product "performs substantially the same function [as the claimed product], in substantially the same way, to achieve substantially the same result." *Lockheed Martin Corp.*, 324 F.3d at 1317.

Dr. Parnell assesses that (a) the function of the docking ports extending from the main raceway is to provide a docking location or position for the strollers, which the

Zoomaroo's docking ports also achieve; (b) the Zoomaroo's docking ports do so in the same or substantially the same way as the '674 Patent articulates, by having an outwardly facing structure containing a slot or channel into which the stroller is received; and (c) the results are identical, in that the stroller is docked to the main raceway of the dispenser. In other words, in Dr. Parnell's view, any differences between the Zoomaroo's docking ports and those of the '674 Patent are insubstantial. (*See* D.I. 292-23 ¶ 77.) IVS has not moved to exclude Dr. Parnell's testimony, or even suggested that it is inadmissible, so I have to credit it as part of the summary judgment process. And, when I do, it leads me to conclude that a reasonable juror could find infringement under the doctrine of equivalents.

IVS tries to avoid this outcome by pointing to an opinion from its expert, Dr. Kimberly Cameron, that Dr. Parnell's interpretation "would effectively eliminate the limitations 'docking ports extending therefrom' and 'two or more branch arms,' as there is no corresponding structure in the Zoomaroo system separate from the alleged main raceway." (D.I. 273-2 ¶ 82.) But vitiation "is not an exception or threshold determination that forecloses resort to the doctrine of equivalents, but is instead a legal conclusion of a lack of equivalence[.]" *Cadence Pharms. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015). And IVS doesn't make any arguments distinguishing the function, method, or result of its docking port arrangement from that of the '674 Patent. Taking the evidence in the light most favorable to Smarte Carte, Smarte Carte has shown that the practical effect of both arrangements is substantially the same, rendering their structural

differences insubstantial: the external position of the docking ports allows strollers to be "docked to the main raceway of the dispenser." (D.I. 292-23 ¶ 77.)

### 3.    A "cart raceway"

The last dispute pertaining to Claim 16 is whether the Zoomaroo system includes a "cart raceway." Dr. Parnell identifies the Zoomaroo system's cart raceway as "the space between the two bumpers on either side of the docking port, which work with the tapered front of the stroller chassis to bring the receiving latch into alignment with the receiving slot[.]" (D.I. 292-23 ¶ 148.) Smarte Carte also points to diagrams illustrating that the cart raceway encompasses the longitudinal space as the wheeled device goes "into and out of" the dispensing system, as well as the lateral space "between the guide bumpers." (D.I. 292-23 at 73–75.) Although IVS argues that Smarte Carte fails to identify a space on the Zoomaroo system that conforms to the full meaning of cart raceway, the evidence that I've described, and which I must credit in ruling on summary judgment, shows otherwise. And IVS offers no evidence to the contrary. Therefore, a reasonable juror could conclude that the Zoomaroo includes a cart raceway.

### C.    Sham Litigation Counterclaims

The *Noerr-Pennington* doctrine immunizes those who file lawsuits from antitrust liability. *See Prof. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). But *Noerr-Pennington* immunity doesn't apply to "sham" suits that, under the guise of petitioning the government, "attempt to interfere directly with the business relationships

of a competitor." *Id.* For litigation to constitute a sham, it "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. The relevant inquiry is whether the suit was objectively baseless at the time it was filed. *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 148 (3d Cir. 2017).[8]

If a court finds a suit objectively baseless, it next examines the litigant's subjective motivation to determine whether the suit "conceals an attempt to interfere *directly* with the business relationships of a competitor ... through the use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Prof. Real Est. Invs., Inc.*, 508 U.S. at 60–61 (quotations omitted). The Third Circuit has indicated that a counterclaimant in a patent dispute must prove these objective and subjective elements by clear and convincing evidence. *See Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 221–22 (3d Cir. 2020); *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 368, 370 (3d Cir. 2020).

### 1. Objectively baseless

To be objectively baseless, a lawsuit must be one in which "no reasonable litigant could realistically expect success on the merits." *Prof. Real Est. Invs., Inc.*, 508 U.S. at 60. If

---

[8] Because the New Jersey Antitrust Act tracks federal law and "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes," I consider the federal and state claims together. N.J. STAT. ANN. § 56:9-18; *see also Sickles v. Cabot Corp.*, 877 A.2d 267, 270-71 (N.J. Super. 2005).

an "objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome," then *Noerr* protects the lawsuit. *Id.*

A reasonable patent owner in Smarte Carte's position could have believed that it had some chance of prevailing in a claim that the Zoomaroo system infringes the '674 Patent. Both systems use similar designs and latching mechanisms to provide the same general service. And the '674 Patent describes much of that. Although IVS points to reasons to doubt Smarte Carte's position, its arguments reflect its own belief in its arguments, not evidence that demonstrates unreasonableness.

*First*, IVS argues that the Zoomaroo system obviously lacks elements of the Asserted Claims, such as a "receiving latch secured to at least the first docking port member and the second docking port member." (D.I. 269-4 at 6:64–66.) IVS contends that this element contains an obvious error (*i.e.*, the use of "and" rather than "or") and that "Smarte Carte and [its expert Dr.] Parnell chose to rewrite the erroneous claim to capture infringement." (D.I. 293 at 15.) To the extent that Smarte Carte sought a revision to the claim language, its argument that there is a scrivener's error is not out of the range of possibility. A reasonable litigant could have read the patent, concluded there was a possibility of convincing a judge that the error existed, and decided to pursue the claim.

In any event, this error does not render Smarte Carte's lawsuit unreasonable because it affects only Claims 8–11. It has no bearing on the other claims that Smarte Carte asserts, including infringement of Claim 16 (which can proceed to trial) and

infringement of Claims 1-3 (which cannot). In addition, the fact that IVS has prevailed on some of its non-infringement arguments does not, on its own, demonstrate Smarte Carte's suit as a whole was objectively baseless. *See Avaya Inc., RP v. Telecom Labs, Inc.,* 838 F.3d 354, 413–14 (3d Cir. 2016).

*Second*, IVS argues that Smarte Carte's suit was objectively baseless because indefiniteness and prior sales render the '674 Patent invalid. Given my conclusion about the indefiniteness of the term "cart raceway," Smarte Carte's position about the definiteness of that term could not have been objectively unreasonable. Even if I were to reach a different conclusion about indefiniteness, Smarte Carte's reading of the patent in a way that reconciled the term among the different claims would not have been objectively unreasonable. It's not clear that Smarte Carte had any reason to think that the term was indefinite until IVS raised the issue. Smarte Carte didn't ignore information in the specification or the prosecution history or otherwise ignore information that would have demonstrated the term's indefiniteness.

Similarly, Smarte Carte's belief that the '674 Patent is entitled to the provisional filing date is objectively reasonable. Indeed, I have rejected IVS's invalidity argument on this basis because a reasonable juror could accept Smarte Carte's understanding of the provisional application's connection to the claim language in the '674 Patent. Smarte Carte was objectively reasonable for having the same understanding when it filed suit,

particularly since Smarte Carte disclosed its prior sales during prosecution and the U.S. Patent and Trademark Office nonetheless allowed the patent.

*Third*, and finally, IVS argues that "Smarte Carte ... recently backtracked on five years of litigation to accept a claim construction of the term 'push-back mechanism' [during patent reexamination] that comports with IVS's proffered construction," and therefore "knew or should have known at the time of filing this lawsuit, that asserting the '674 Patent was objectively baseless." (D.I. 293 at 18.) However, these events postdate the Complaint, and the question is whether the suit was objectively baseless at the time Smarte Carte filed it, such that no reasonable litigant could hope to prevail. *See In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d at 148. IVS doesn't offer any evidence bearing on that question. And, of note, Judge Hillman accepted Smarte Carte's initial definition of "push-back mechanism" during claim construction, describing it as "most consistent with the claim-terms themselves, the language within the specification, and the invention as a whole." (D.I. 117 at 65.) In fact, he rejected IVS's proposed construction as "adding an additional limitation not otherwise specified or intended by the inventor." (*Id.*) These considerations show that Smarte Carte's initial position was reasonable, even if it adopted a different position during reexamination to avoid an invalidity finding.

### 2.    Specific intent

Even if IVS could establish that Smarte Carte's suit was objectively baseless, it can't show that Smarte Carte's motivation was to interfere with IVS's business by using judicial processes as an anticompetitive weapon. Smarte Carte has the right to defend its intellectual property, and litigation is a permissible business strategy to do so. Indeed, if a party prevails in litigation, that would be the outcome of litigation, not the process of litigation, and the outcome of litigation cannot be the basis for a sham litigation claim. *See Prof. Real Est. Invs., Inc.*, 508 U.S. at 60–61.

IVS does not point to any evidence showing that Smarte Carte sought to use the litigation process to maintain a monopoly. At most, it offers a statement from Ben Krause, a Smarte Carte director, that Smarte Carte "[u]ses litigation as a part of their business strategy." (D.I. 293 at 20.) So what? A patent offers a legal monopoly, and a company can legally make business decisions based on its ownership of that monopoly. And litigation is the way to do that. Thus, even if it's admissible (and the Parties disagree about that), Mr. Krause's statement doesn't reveal anything about Smarte Carte's intent to use the levers of litigation to interfere with competitors' business operations. It just reveals that Smarte Carte enforces its intellectual property rights vigorously. That doesn't make Smarte Carte's suit a sham.

IV.    **CONCLUSION**

Smarte Carte is entitled to summary judgment dismissing IVS's sham litigation counterclaims. IVS is entitled to summary judgment that it doesn't infringe Claims 1–3 and 8–11 of the '674 Patent. The rest of the issues will proceed to a jury. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

June 4, 2025